I am Gary Earns for the Appellant Ken Nelson. Before I start my argument, I have a couple of housekeeping matters that are a little embarrassing to me, but they are my fault. On my main brief, page 11, I correctly stated that the Wisconsin order transferring a judgment was June 7, 2011, approximately two years and 11 months after GP credit ceased to exist. In my reply brief, somehow I said that date was July 7, 2011, and argued that it was more than three years. The second apology is for the reply brief, page 27, line 8, where I did not edit it carefully enough. It says a party's failure to breach a duty. That should have been a party's failure to perform a duty or a party's breach of a duty. Now I'll address my argument. The appeal in this case, most of the parts of the appeal in this case are contract law, with one part being equity. So a small part in equity, most of it in law. And the appeal is that the decision below does not recognize three limits on freedom of contract. And those three limits occur in three categories. Limits imposed by subject matter jurisdiction, that the parties cannot do anything by contract or otherwise to granted court subject matter jurisdiction, or as in this case, to give to a court ancillary jurisdiction where it doesn't otherwise have it. That the parties may not contract to direct a federal district court not to follow the rules of procedure. That finally, that the parties may not contract under South Carolina substantive law for a penalty. And in the last part, the South Carolina law of confessions of judgment, I have to confess that when I first started reading about confessions of judgment, I was reading a lot of 19th century cases with pretty fluid language. And as I became more familiar with the law in South Carolina, it was clear to me that South Carolina had very carefully put bounds on confessions so that they were not, you know, I think one of the cases talked about the warrior who throws down his weapons and breaks his sword and stands naked or something like that. The essence of our dispute with the decision below is that the decision does not recognize the distinction between an unwise or a foolish bargain and one which is unenforceable. I'm not going to... Now, are you starting with the penalty? No. I just wanted to run through the whole list. I'm going to start with... In your research, did you find a case in which the South Carolina court has overturned a confession of judgment as a penalty? There are very few cases in South Carolina on confessions of judgment and I think I cited them all. Let me put it to you this way. It seems to me that the district court used its inherent power, which runs, only its inherent power, which runs counter to the Supreme Court case of Cochran and Nen. The two ways it seems to me that they could have gotten it is to file a summons and complaint and allege a breach of contract and the remedy ultimately would be confession of judgment or to have reserved in the ordered jurisdiction for its enforcement. Well, this is... I thank the court for leading into my first argument, which is about Fairfax County-wide and Caconan. At the time of the settlement agreement on November 1st, 1994, Fairfax County-wide had been the law in this circuit for 16 years. And it said that unless the court reserves jurisdiction that the only way to go back is to motion for Rule 60B to reopen the case or file a new lawsuit. Caconan cites Fairfax County-wide and makes it really clear that a dismissal doesn't need, doesn't warrant any exercise of ancillary jurisdiction because nothing is needed to enforce a dismissal. So Caconan, and in Fairfax, the... Caconan specifically rejected an assertion of inherent authority that had been made and accepted by the Ninth Circuit. Caconan said there was no inherent authority because, and I think Fairfax is illuminated on this, because Fairfax refers to the fact that once the case is dismissed or suggests that once the case is dismissed, there's no longer a case of controversy. So there's no subject matter jurisdiction for case of controversy. So Caconan was decided here after the 1993 dismissal, but before the settlement agreement. So it was too late for the parties to comply with Caconan, right? But objectively, they knew about Caconan. They knew its limitations. They could have done a couple of different things. They could have said that this settlement agreement could be enforceable in any state court or in South Carolina state court. They could have said... They could have... May I interrupt you for one question? You don't dispute, do you, that there's diversity of citizenship jurisdiction here, do you? Well, to tell you the truth, Your Honor, nobody knows what the exact constituency of Orlando Residence Limited is. Why wouldn't diversity jurisdiction exist? The amount of controversy is satisfied. Nelson's a citizen of Wisconsin. Well, we don't know who the Cardin v. Arcoma constituents are of ORL. This is an old dispute. Is that the only reason you identify for the absence of diversity of citizenship jurisdiction? At this point, yes. And also because... When you say at this point? Well, I mean, I have... There's nothing in the record to show diversity. And I can't speculate as to who the constituents of Orlando Residence Limited are. Don't know. So if the partners, and I understand there's only one, the member of Orlando is diverse, that is to say, does not reside, is not a citizen of Wisconsin, there's diversity of citizenship jurisdiction, right? There would be, in a new action. In a new action. In a new action. In a new action. And that's why... And so your secondary argument is that under no circumstances would this court or the district court be authorized to treat this case as if it were a new action? I don't... I think O'Connor makes it clear. This is not a new action. It can't treat it as a new action. A new action has to be commenced with a summons and complaint. That's our position, both on O'Connor and on the federal rules themselves. So if we vacated and remanded for that formalism, all this jurisdiction stuff would be by-the-by? It's not a formalism. It's not... It's an absolute formalism on these facts. No, it isn't. I apologize for being... Why isn't it a formalism? Because the confession of judgment is only in the earlier action. It specifies... Confession of judgment is a chosen action. If limitations doesn't bar an action on a confession of judgment, I don't understand what you just said. Well, the settlement agreement agrees for the confession to be entered in the foreclosure action. That foreclosure action was started in 1998 and ended in 1993. It does not... So are you talking about the statute of limitations? No, I'm talking about the actual contract. The statute of limitations is a separate issue. I'm talking about the actual contract for the confession. That is only limited to one action. It is not... And we cited that you have to specify the court. In this case, it specified the action. It said the foreclosure action. The settlement agreement defines the foreclosure action. Perhaps you could respond on the statute of limitations argument, because I'm not sure I'm following the other... Okay. The limitations argument is really separate, because in the briefing of the district court, the argument was about... Could I be more specific? Yes. In response... I mean, following up on Judge Davis's question about the formalism, it goes back, they plead diversity that addresses the subject matter. I mean, they issue, they file a complaint, et cetera. What's your position with respect to the statute of limitations? It ran out, and it can't be told under the equitable tolling, and it's a penalty. So that would be, I guess, your response to Judge Davis's question about it being more than a mere formalism. It is not a mere formality. It is essence to the presentation of affirmative defenses here. Well, but I... I'm sorry. Go ahead. When I said formalism, I was talking about summons and complaint new action. You put a new number on it in the District of South Carolina, and that's the formalism I was talking about. Now, you say there's no tolling, but that doesn't go to subject matter jurisdiction. No, no. Tolling is a separate issue. What I... Tolling has to do with who had control of the confession of judgment paper. And we never got a chance to argue that. Okay. But the issue of the contract, the contract is not for a confession of judgment in a new action. It's for a confession of judgment in an old action, which is over, and there's no jurisdiction over it, and that can't be under Kekone. I'm sorry. What's your best authority? In other words, if I understand your argument, you're saying, if you haven't agree... If you... I'm having a difficult time getting my head around it, because a confession of judgment, as I said a moment ago, is a chosen action. You can sell it. It's marketable. And your argument seems to be, oh, no, under the contract, I can't even articulate quite what you're saying. Okay. This is a contract. This is a settlement contract. A confession is not a contract. It is a contract. It's not. It's a contract. Under South Carolina law, it's a contract. The document refers to the contract. The contract... The settlement contract refers to the document. Under South Carolina law, they're a single contract. It's not a... It's not like a promissory note. I mean, it's not a negotiable instrument. It can't be transferred except as part of the rights under the settlement agreement. They are a single thing under South Carolina law. Klutz makes that really clear. They are one thing. And accordingly, to enforce one is to enforce the other. You can't say... The district judge said that I'm not enforcing the contract. But the district judge was, because it was paragraph eight of the settlement agreement that says, because, you know, when this happens, you can file this thing. The problem is, you can't file it in a case that's dead. Well, what you say then, the only remedy would be to file a 60B motion, if they could, to reopen the prior case. Or start a new lawsuit. You would agree that they could do that? That's what Fairfax said. That was not done. But could they? What's that? It could be. But could be. It could be, but then, of course, there'd be the full panoply of affirmative defenses and things. Remember, the trial court here, we briefed this very thoroughly before judgment was entered. But the trial court denied all those motions as moot and simply entered a judgment based on the confession. There were no decisions on those motions. I say I'm done. Thank you very much. Mr. Bolso? No. Good morning. Good morning, Your Honor. Gino Bolso here on behalf of the Applee-Orlando Residence Limited. If I could, let me begin by just pointing the Court in the record to where the facts are concerning diversity of citizenship, given the Court's concern about that. First, on page 135 of the joint appendix, the Applee-Orlando Residence Limited expressly alleged that Orlando Residence Limited was a citizen of California and the defendant, Mr. Nelson, was a citizen of Wisconsin. On page 379 of the joint appendix, Mr. Nelson admits that Mr. Hartage is a domiciliary of Rancho Santa Fe, California, that he lives there in Rancho Santa Fe, California. On page 389 of the joint appendix, Mr. Nelson agrees that Mr. Hartage is the principal of Orlando Residence Limited. That is the sole principal. I think all of that is pretty easy. Okay. I mean, I think even the appellant concedes that you could fix subject matter jurisdiction. It sounds like you just pointed out there's no need to fix it. But what about this separate action point? We think no separate action is required, Your Honor, because Judge Norton had subject matter jurisdiction to do what he did. And I think it He didn't. He retained no jurisdiction. The suit was, he retained no jurisdiction after the settlement was entered, did he? Correct. He did not. Then how did it, how, where, what is the basis of his authority? That there was never a final judgment entered in the district court, which when one reads Judge Norton's opinion, it's clear that is the basis for his ruling. But the case was still pending. The case was still pending. And I think the law is, I think, fairly clear. We've got the Did he dismiss? Excuse me, Your Honor? Didn't Nelson dismiss? No. Mr. Nelson was not dismissed, Your Honor. What occurred was that on October 14 of 1993, Judge Norton entered an order, essentially an administrative closing order, where he said in words or in substance, I've been advised the parties have settled. The case is dismissed for good cause shown with the right to reopen if the settlement is not consummated. Is that in the record? Is that order in the record? Oh, yes, Your Honor. Where's that order? It should be around page 416 of the joint appendix. Okay. And If no motion to reopen, and they still do, I think, if no motion to reopen is filed within 30 days or 60 days, the case is dismissed with prejudice. Your point is that the order in this case doesn't say that. It doesn't say that. And if it had, then the case would have been over. We might have a difference. There would have been a final judgment. And it's because of cases like this, I think that Judge Motz, bless his heart, came up with that additional language in the District of Maryland. Perhaps. It makes perfect sense, because there certainly needs to be clarity as to when an order constitutes the final judgment of the court and when it does not. Exactly. Because under your theory, it continues in perpetuity. Oh, no, Your Honor. No, it's essential for the court at some point to issue a final judgment on a case under Rule 58. It's simply that what occurred... The case remains open in perpetuity. It absolutely remains open in perpetuity, which is what occurred here. Because Judge Norton's order reflects that any party has the right to reopen. But doesn't it say before December 31st? Yes. Isn't there a qualifier in there? December 31st, 1993? Yes, Your Honor. And the record reflects that on December 23rd of 1993, the plaintiff at that time, the RTC, came in with a motion to clarify. That is, a motion to amend the court's prior orders. Because the settlement was not consummated. And the... Did the... I'm sorry. No, please. Did the court respond as required? How did the court respond to that motion to clarify? The court held a hearing on January the 24th of 1994, heard oral argument with regard to that motion to clarify, and then on April, in April of 1994, issued an amended order of foreclosure, which changed the rights of the parties in numerous respects, not just with regard to what the appellant is claiming to be Rule 69 respects. It's dated March 15th, 1994. I stand corrected. Amended. Okay. Okay. March 15th, 1994, which did a couple of things. That order, first of all, it granted this motion that had been filed prior to the December 31, 1993 deadline to reopen. And it allowed a foreclosure on the second lien that was at issue in the case. This case involved two mortgages. The first one that was resolved by a summary judgment ruling in April of 1991, and then a larger $7.5 million mortgage that originally had been resolved by a summary judgment entered on June 13 of 1991. Judge Norton actually vacated his summary judgment in favor of the RTC on the second mortgage from June of 1991. He did that in an order on February the 18th of 1993, which is reflected on page two of his order, which is in the joint appendix. In the order on March 15 of 1994, he now gives a judgment of foreclosure on the second lien. That affects a right that had not been resolved prior to that time. He also allows the plaintiff, the RTC, to amend the prior judgment to remove a judgment, a deficiency judgment, against one of the defendants, Hilton Hotel, Hilton Head Hotel Investors, because originally a judgment had been entered against that entity on the first mortgage in favor of what was called SOMLA, which was a mortgage of about $1.5 million to buy furniture, fixtures, and equipment, which the RTC later bought in 1992. That judgment was against Hilton Head Hotel Investors, against Mr. Nelson, against Mr. Hustad, and against Mr. Anderson. In this March 15, 1994 order, the court vacates the deficiency part of that judgment at the RTC's request and the request of the other parties, because apparently under South Carolina law if you're seeking a deficiency judgment in certain circumstances, you can only make one bid at the foreclosure sale. So via this March 15, excuse me, 1994 order, the court amended its prior orders and allowed the case to continue. So we do not have the case as we had with the Supreme Court in the Kekkonen case, where you had a final judgment, which was final. It ended the case. And then after the case was over, you had a party coming back asking the court to enforce a settlement agreement after the case was already over. This Judge Floyd is not that case. That's why Kekkonen is distinguishable, and that's why Judge Norton, in his opinion, properly cited to Kekkonen, but explained why this was different. What happened here was that we never actually got to the final order. There was that December 23, 1993 motion to clarify that was filed. Judge Norton took up that motion on January 24, 1994, and then issued an amended order of foreclosure on March 15 of 1994, and then issued further orders. There were further proceedings in the district court. There were proceedings with regard to the receiver, and whether the receiver was going to be released from his bond, and whether the receiver was going to have to continue to pay the proceeds of the rental income from that hotel over to the plaintiff while the foreclosure sale was occurring. So what we have is a case where a district judge properly understood that a final judgment had never been entered, and therefore, he properly entered this judgment against Mr. Nelson so many years later. And I'll submit that the actions of the appellant actually conflict with their arguments here today because something else that occurred was that in 1997, the appellant filed the confession of judgment that had been signed by one of co-defendants, Mr. Wallace Husted. The record is very clear. This is pages 225 and 226 of the joint appendix that Mr. Arons, the counsel for the appellant here today, Mr. Nelson's counsel, requested of the RTC's counsel that he provide the original of Mr. Husted's confession of judgment. By letter dated, I believe it was February of 1997, the RTC's counsel, Morris Ellison, provided the original confession of judgment for Mr. Husted to Mr. Arons. And then Ms. Ruth Husted, who's Mr. Arons' client, filed that in the district court in 1997. So respectfully, even the appellant recognized that this case was not over, that really what had occurred was that you had a settlement of some of the issues, but not all of them, and that the issues with regard to Mr. Husted and with regard to Mr. Nelson remained open. If we disagree with you, what's your response? Is that, does that end the inquiry? It depends, Judge Duncan, on what the basis for the disagreement is. Well, I'm looking at the March 15th order. Most of these appear after the October 14th one, 1993, to deal with the foreclosure. Yes, many of them do, Your Honor. Not the settlement agreement. And in fact, I didn't, I'm reading the October 14th order, which gives the not to exceed, is it if the settlement is not consummated, the right to reopen if the settlement is not consummated, is to be held open for that period of time, not to exceed December 31st. And then the March 15th order that you refer to is dealing with foreclosure. It deals with foreclosure, Your Honor, but the foreclosure was part of the settlement. Okay, but my question is, if we don't agree with your theory about our subject matter jurisdiction, do you lose, or do you have, or is there anything else you can proffer? I can, I can proffer a number of things. If the court finds that the October 14th, 1993 order was a final judgment, then one thing that is clear under the case law is that... For December 1993, the period that the court set for the parties to come in to reopen. If, in fact, no one came in before the December 31, 1993 deadline, Your Honor, the court should still affirm the district court on the basis of the Quincy decision and this court's own decision in Fairfax. And here's why. Both of those involve motions under Rule 60. Obviously, a Rule 60 motion can only be filed when there is a final judgment. Judge Norton, I think it's very clear, as we mentioned earlier from his order, is of the view that there never was a final judgment. But if this court were to find that there were a final judgment, then this court respectfully should do what the First Circuit did in Quincy just a few years ago in 2011. The court treated, in that case, a motion to reopen as a motion under Rule 60, even though the motion came after the time that was set in the order of dismissal for trying to reopen the case. The court implicitly treated that as a Rule 60b6 motion and found that there was grounds to allow the enforcement of a settlement agreement. And once again, that First Circuit panel, which at that time actually had retired Supreme Court Justice David Souter on it, found that that practice was consistent with Kokona. So even if there was a final judgment, there is the possibility of coming forward with a Rule 60b motion after a final judgment. And then we look at Fairfax, Your Honor. Fairfax also said that even if you have a final judgment, if someone comes in seeking to enforce a settlement agreement, the court can't allow it where there is a basis for subject matter jurisdiction, as there is in this case. There's diversity. In fact, Fairfax made it clear that even without a new basis for jurisdiction under Rule 60, if someone has failed to comply with the settlement agreement, the plaintiff can come back in to reopen and litigate the underlying claims. The court would not allow enforcement of a settlement agreement, but the plaintiff could come back in and reopen and try whatever issues had been brought in the case originally. And the Fourth Circuit sort of distinguished itself from the Sixth Circuit, which allowed enforcement of a settlement agreement, even in the absence of a new basis for federal subject matter jurisdiction. So what do we have under Fairfax? Fairfax says, plainly, that even if there's a final judgment, the plaintiff can come back in under Rule 60, and if there is a basis for subject matter jurisdiction, the court can enforce the settlement agreement. So here, we have a basis for federal subject matter jurisdiction. We have diversity of citizenship, which- Can the winning party file a Rule 60 motion? Excuse me, Your Honor? Can the winning party file a Rule 60? I would think not. But here, the plaintiff would be the losing party, because the case was dismissed on the basis of the settlements. Judge Norton, at the party's request, or perhaps on his own initiative administratively, dismissed all the plaintiff's claims, saying, you guys have this case settled. So if the defendant breaches a settlement agreement, then under Rule 60, I submit respectfully, yes, a plaintiff, any non-breaching party of the settlement agreement, could come back in and seek to have the agreement enforced. In fact, that happened in Quincy. Are you a losing party at that point? When all your claims are dismissed, I think you qualify as a losing party, Judge Floyd, yes, absolutely. And that's exactly what happened in Quincy. In Quincy, you had the party who had prevailed came back into court because certain files that were supposed to have been turned over as part of that settlement were never turned over. The First Circuit, under Kekkonen, found that that procedure was appropriate. And I'll also point out another interesting jurisdictional issue here involves this Court's prior decision in the Groves case. Because when we look at this order that set the deadline of December 31 of 1993, the order reflects that the case is dismissed subject to the party's right to come in before December 31 of 1993 and reopen the case if the settlement is not consummated. Question becomes, is that a final judgment under the law of the Circuit? I submit that no, that unlike in Maryland with the new language that we have, that is not enough. Because in Groves, what this Court found was that if you had an order that dismissed a complaint with leave to amend, that is not a final judgment from which an appeal will lie. And the Fourth Circuit in Groves relied expressly upon the U.S. Supreme Court's decision in the Young case, J.U.N.G., from 1958, where the Court said expressly that if you have a district court order dismissing a complaint, and in that case giving the plaintiff 20 days to amend, if nothing else happens, that is not a final judgment. And what happened in the Young case was that two years after the district court entered an order saying the complaint is dismissed, you have 20 days to amend, after nothing was done two years, the plaintiff comes back in and says, Your Honor, we've decided to rest our initial complaint, please enter a final judgment, which the Court then did. The plaintiff then appealed from that judgment that was issued in 1957, and ultimately the Because that initial order that left open the ability to revivify the proceedings through the filing of an amended complaint caused the order of dismissal not to be final. We have in substance the same thing. We have the Supreme Court saying an order that dismisses a complaint with leave to amend for 20 days is not a final judgment from which an appeal can be taken. Well, we do have the same thing in South Carolina that exists in Maryland, and I can't think of the name of the order now, that once one of these dismissals are signed off on, then the clerk enters that order, and I didn't see anything like that in the record, but I know that's the practice in South Carolina. Some of the cases refer to this thing called a Rubin order, which is, I think, similar to what we have here. I don't know if this is precisely a Rubin order. I think it is not precisely a Rubin order, Your Honor. But with a Rubin order, and again, it's not something that we have before us, but if a Rubin order does not deny all relief with prejudice, then that order also was not final because under the Supreme Court's jurisprudence in Young, in order to constitute a final judgment, a court's order must deny all relief with prejudice. Here, Judge Norton's October 14, 1993 order did not do that. Judge Norton gave the parties a right to reopen before December 31 of 1993. So that was a right that had not been denied, and that's a right that's in addition to a right that would have been granted by the Federal Rules of Civil Procedure under Rule 60. But that, under a Rubin order, that same practice, I mean, you can come back in within the 60-day period of time, but it's been 11 or 12 years since I was a district judge, but I think that Rubin order says it will be dismissed with prejudice, but it's not in the records. Yeah. If a Rubin order dismisses everything with prejudice, then I would agree, as it practiced in Maryland, that's a final order. But if there's a way for the plaintiff to continue in the case, either by amending a complaint or by just filing a motion to reopen because the settlement was not consummated, then that is not a final order. And that's not only the holding of this court in Groves, that's the holding of the U.S. Supreme Court in the Young case. And I see that my time is over, so I thank the court, and if there are any other questions, I'd be happy to address them. One question about our case in Rivero, 2002 case, does that have any impact? Rivero? Rivero. I can't. I'm not immediately familiar with that name, Your Honor. I may ask that question. Okay. Thank you. Mr. Arendt, do you have some time for rebuttal? I'd like to address the last point about Rubin orders and dismissals. Could Conan, and while you do that, if you could point to me in the record where you say there is a final order in this case. It is, Judge, it is a final order as to Nelson. No, there's no such thing. But there is a dismissal. No, there's no such thing as a final order as to X. There is a final order that concludes the action. But you go ahead. Okay, first of all. Point that out as well. There was a judgment of foreclosure that was entered in 1991. Part of that judgment included a judgment against Nelson. Nelson was only in this case because he was a guarantor. He appealed to this court. While he was on appeal, Judge Norton vacated the judgment on the guarantees and set it down for further proceedings. Then as the court, as that process went along, we ended up with Judge Norton's order in October 14, 1993, where he says, okay, I understand you're doing settlement, right? I'm dismissing this if you can reopen it. He had an order of dismissal, right. Right. Now, I think it's really important to look at Judge Norton's decision below. It's at JA 417. Here's what he said. The case was again dismissed with the right to reopen if settlement is not consummated before 12-31, 1993. Nobody removed to reopen the case before the December 31, 1993 deadline. That's what Judge Norton said in his decision below. Your contention is that? That all of the orders about the foreclosure were permissible ancillary enforcement of the court's foreclosure judgment that Judge Norton had not vacated. So your contention is that the October 14, 1993 order is a final judgment? That's right. It is a final order. Is there a difference? Yes. Well, no, no. Because orders can be final judgments. I'd like to refer to Kokona. So what is the October 14, 1993 order? It is an order. A final judgment? It is a final order, became final on December 31st under Rule 41A2. And so there would have been, it would have conferred a right to appeal within the appeal filing period? I would believe that it would have, not on Nelson, but on the RTC as to whatever they could argue. But it wasn't without, it was 41, here's the issue, 41A2 provides for dismissals without prejudice. The whole argument about it has to have with prejudice, that's not what 41A2 says. And Kokona directly cites 41A2. That's what a Rubin order is. A Rubin order is an order under 41A2. It is not an involuntary dismissal under 41B, but 41A2. So the plaintiff can say, judge dismissed the case. The court can say, okay, such terms as are just. But it's without prejudice, unless the court says it's with prejudice. But the rule doesn't require it to be without prejudice. So what could have happened is if the parties didn't settle, they could have started a new lawsuit or on that guarantee. The real kicker here, though, is if this case wasn't, if there wasn't a final order, why didn't Judge Norton set down the case for trial on the guarantee? The trial schedule was vacated. There was a trial schedule. It was vacated when the parties said, we think it's settled. But he never did that. So Judge Norton is the one that says that that dismissal under 41A2, without prejudice, because it doesn't say it's with prejudice and it's not required to be with prejudice, he says it's never reopened. In the Rivero case I was asking the counsel about, which is a four-circuit case, I thought it stands for the proposition that the mere recitation of a settlement agreement and its effects, as opposed to approval and incorporation, is not sufficient to give the court jurisdiction to enforce the agreement. Is that correct? Well, we argued Smith v. Rivero, we think it's the law in the circuit and applies directly here, and barred any exercise of jurisdiction based on the original lawsuit that was removed as a foreclosure action. That's why we cited Smith. And I want to distinguish opposing counsel's remarks about amendments, right? I don't know if that's a Rule 41 or what kind of a... Amendments are under Rule 15. This is Rule 41. Now maybe that's a distinction without a difference, but Kekkonen directly speaks to 41A2. And that's what happened here. It was a dismissal under 41A2. It was without prejudice. It was a final order. It ended the case. It ended the case in controversy. There was no case in controversy. No one imagined that there was a case in controversy because otherwise the court would have set a schedule for the trial on the guarantee. Now, I have a few more seconds, and I don't know if this is properly rebuttal, but I do want to talk about the penalty aspects of this. South Carolina law is explicit that you can have a liquidated damages contract, but it cannot be more. It has to be a good approximation of what a party's contract damages were. That never occurred here. This $4 million thing is a punishment. And you can tell by the language, to a certain extent of the decision, but also the opposing party's arguments that Mr. Nelson is a bad man and ought to be punished. He needs to have a $4 million judgment dropped on his head because he didn't pay $64,000. And when I come to my last point about equity, I've got 10 seconds left, equity is about doing justice under all the facts and circumstances, not about letting somebody buy an old, archaic claim for $20,000 and try and leverage it into a $4 million anvil that falls out of the sky. And I'm done. I have no more time. Thank you. We will come back. May I? You seem to be arguing that this statement on page 417 of the JA by Judge Norton, nobody moved to reopen the case. You seem to be placing a lot of weight on that statement. Am I right? Well, I did because counsel said somebody reopened it, Judge Norton didn't think so. Well, what does Judge Norton mean in that sentence when he says nobody moved to reopen? I think he means that Nelson was dismissed from the case. And why do you think that's what he means? Because it refers to settlement agreement. The only thing that there is no final judgment in place at that time is the claim on the guarantee. There is a final judgment of foreclosure in place. It was in place in 1991. Now you're losing me. Well, the judge goes on in the next paragraph, the very first sentence to say, the parties who had long been working towards settlement eventually settled the case in November 1994. So how do you reconcile the judge's acknowledgement that, in fact, the case was not settled by December 31st, 1993, and the fact that nobody, quote, moved to reopen? Reconcile those for me. Listen, I reconcile them by saying that the judgment of foreclosure was not reopened, but the judgment on the only part of the foreclosure that had not been vacated, which was, that had been vacated. The judgment, there was a judgment on the guarantee against Nelson. That was vacated on Nelson's 60B motion. That guarantee issue remained to be tried. The foreclosure was settled. Now, and the orders that the court entered about the foreclosure are perfectly appropriate ancillary jurisdiction orders to enforce its 1991 judgment of foreclosure, which means that it could follow up and enforce that judgment of foreclosure in the same way that supplementary proceedings or other things. So the handling of the receiver, the handling of the sale, those are ancillary enforcement orders to the judgment of foreclosure. Where there was no final judgment, there had been a final judgment as to Nelson on the guarantee, but it had been vacated. And so there was no final judgment. No, it had been vacated. It had been vacated. Well, but there's a final order dismissing. This is a dismissal. This is a dismissal. It says it's a dismissal. It says the case is dismissed. What's open? The only thing that's open to be dismissed is the claim against Nelson Husted and the other one on the guarantee. That's the only thing that's left open that's dismissed. That's the only thing that has to be settled. Because otherwise, if there had, let's say there had been no guarantee, the court would have simply had, would never had to issue a further dismissal. Thank you very much. Thank you, Judge Dunn. Thanks for your patience.
judges: Allyson K. Duncan, Andre M. Davis, Henry F. Floyd